Good afternoon, your honors. May it please the court, my name is Elizabeth Krushek and I represent Francisco Lopez-Reyes. The district court here erred in denying Mr. Lopez-Reyes' motion to dismiss the indictment because Mr. Lopez established that he had a plausible claim to a U visa and he was thereby prejudiced by the denial of his due process right to counsel. The issue disputed here is the plausibility of an inadmissibility waiver. The government is not disputing that Mr. Lopez-Reyes was facially eligible or that he had a plausible claim to a law enforcement certification. The Lichter declaration, the declaration by immigration attorney and expert Laura Lichter, is the only evidence in the record that analyzes all of Mr. under the correct legal standards. If the district court found in discounting the defense declarations about the plausibility of relief that it was implausible that he would have received the certification from the Phoenix Police Department due to the inconsistent statements that he gave to the responding officers and his failure to cooperate with the follow-up detective don't we judge that by a clear error standard? Well I think there there are two first of all I want to separate two things that you're asking because you asked about the plausibility of the law enforcement certification. Right. The government isn't disputing that and the district court appeared to talk about its view of Mr. Lopez-Reyes' helpfulness and I agree that it muddied the the plausibility of the inadmissibility waiver. I guess the basis of my question though is that if the victim is not cooperating and if the victim lied initially when asked if he could identify the assailant then there is no case to go forward. So as I understood the district court's there's just no way that an agency would certify with a non-cooperating victim. So that's not in my view an accurate recitation of the facts of the situation. So is there clear error by the district? Yes. Okay is that is that your position? Okay there is clear error because I'm sorry go ahead go ahead Mr. Krischak you may have just about to answer my question. Well I was going to say because there's clear error because my client did in fact cooperate. The only thing that happened was that he did not initially disclose that he knew the initials of the person and we're not entirely sure how that interaction went down but the fact of the matter is my client consistently described the individual as best as he could. Remember he was stabbed, he was in an emergency room, he was in pain, he had been passing out and so forth. So he described that individual and then the law enforcement officer went back to him and said hey I think that there's indications that you may know who this is and my client said I know his initials are CJ but that's the only other thing that he knew about him and he consistently described him and provided all of the information that he had. I thought to me that issue is a bit of a red herring about the identification and whether he lied or he didn't lie to the officers. It seemed that what the district court was commenting on or finding expositive was that he didn't cooperate, he didn't continue to cooperate. So when the officers called the defendant and the other witnesses they didn't return calls, they didn't cooperate in prosecution and the case ended up not being charged, it didn't go forward. So it seemed that the lack of cooperation was in later stages and when I read your brief it seemed to suggest to me that the government had the burden of proving lack of cooperation and it seemed to me that the defendant had the burden of proving that he was helpful and cooperated so that he could get this waiver and get the U visa. I agree with that, the defendant has the burden of showing prejudice, the government would have the burden on showing the due process violation. So I agree with that, we do have that burden. But what I would say is that there's not sure what else my client could have done, he provided the description. He could have returned the phone calls from the follow-up and he didn't do that. So the police report says, I've left messages for this victim and you have to, the police report is in the context of talking to one victim who had been dragging his feet about providing his medical records, not my client but a different victim, there were three individuals who were stabbed in this incident. But according to the follow-up detective's report, none of them were returning his call. The problem is we don't know if my client got those calls, those are just three statements in a police report, we don't know what happened after. It's unclear what else my client could have done, he could have been called down for a lineup. The difficulty I'm having with your argument is that seems to be putting the burden on the government. I mean your client could have come forward with a declaration, I never received a message, they didn't call me, I was willing to cooperate, but I didn't see anything like that in the record. And when you argue that the police report is not sufficient because it doesn't prove that your client received the phone call, that's putting the burden on the government rather than on the defendant to come forward and say, you know, I was cooperating, I didn't get the messages, I am eligible for this waiver. But I guess I understand your point, but I guess my response would be that we really still don't know and there's no, the government didn't point to, I mean I acknowledge this is my burden to show prejudice, but the government hasn't identified any real defects there other than the fact that my client maybe didn't return a phone call that we don't even know that he got, and we also have an expert declaration from Margarita Silva that says that under her experience, even with all of these circumstances, even if clients are minimally cooperative, the Phoenix Police Department will give these U-Visa certifications. So if we, you only have a few minutes left, so if you get this certification, then the other issue is his convictions for robbery, his robbery convictions where he was using a simulated weapon, a toy gun. There's indications in the record that the toy, the airsoft gun actually looked like a real gun. Is that accurate? Did it really look like a gun? It's, I don't know that the record honestly is clear enough to answer that question. I know that the PSR does indicate that the people were afraid, so I don't know exactly what the airsoft gun looks like, but it's a toy that's used by children. They're toys, but they are very realistic looking. They are required to have the plug on the front of the gun, the orange plug, but according to the PSR, he had it in his waistband, which means you couldn't see the orange plug, and they're designed to look like, you know, a Glock, you know, they're designed to be very, very detailed. It'd be very difficult to tell if you had that in your waistband, you couldn't see the orange plug, but it was not a real gun. No, I understand that, your honor, and I'm not really arguing about the nature of the gun, but I think the overall offense, it was an armed robbery, that's what he pled to, but the fact of the matter is he didn't injure anyone, and he couldn't have intended to injure anyone because that was a toy gun, and that's our point about the robberies, and those robberies were not contextualized by the district court, and looking at why they came about, how they were committed, they were all committed as a result of the trauma that he received. I know he was only convicted of three, but I thought I read in the record that he admitted to a four. There was that in the, I think that he was actually committed to, there were two counts in one case. Okay. So, Ms. Christia, if you're at about a little over a minute, did you want to save your time? Yes, please, your honor. All right, thank you. Thank you, Mr. O'Shaughnessy. Mr. O'Shaughnessy, whenever you're ready. Good afternoon, your honor. May it please the court, Justin O'Shaughnessy on behalf of the United States. The district court correctly concluded that the defendant could not establish and the district court's factual findings regarding both the minimal level of assistance that the defendant provided to law enforcement contrasted with his serious criminal record supported that decision. There's a number of points that I'd like to address with regard to those factual findings, because as the court just pointed out in a number of the exchanges with counsel for the appellant, there was no clear error in the district court's determination that the defendant did not ultimately participate because it was based off of police reports that were provided by the defendant himself in support of his motion to dismiss. And while the appellant's counsel claims that we don't know whether or not the defendant received these phone calls, the reality is that as Judge Beatty pointed out, the defendant not only could have provided a declaration with regard to that issue, but did in fact provide a declaration. And part of that declaration did address certain portions of the police reports, specifically the allegation that the defendant lied to the police. So clearly the defendant was aware of the documents that were being submitted by himself as exhibits to his motion, had the opportunity to say this statement that multiple phone calls were made to witnesses, including myself, and were not returned. And that is the reason why no prosecution was able to go forward. It was certainly something the defendant had every opportunity in that declaration to address and chose not to. So under those circumstances. Let's suppose that he had been one of the victims but had never been spoken to by the police. Could he come forward now and say, look, I've got information about an unsolved crime in Phoenix, and if you let me, I'll go Does that work? Statutorily, the eligibility for a U visa is based off of whether or not you can receive a certification that you either have provided or will in the future provide assistance to law enforcement. So it is conceivable that an individual who was the victim of a crime and was still stood ready to provide some sort of assistance could do so. I think that's obviously factually very dissimilar from what we have here. Why would the repentance in the face of deportation or indictment change that? So if he came forward and said, hey, you've got an unsolved crime on your hands that you would really like to solve, and I can help you. And I wasn't willing before, but I'm willing now if you'll help me out here. Why would that make a difference in terms of the Phoenix Police Department would be willing to issue a U visa certification? Well, Judge Bybee, I don't think it would make a difference in terms of that question. I think it would make a difference in terms of whether or not just on the basis of the text of the statute, a defendant could make an argument that they had some level of eligibility. But you're absolutely right that when it comes to the question of plausibility, both in terms of whether or not the police department or local law enforcement would grant that certification now 13 years after the fact, and presumably well after any ability to actually conduct a prosecution in this instance. The 13 years is interesting because that might raise questions of whether there's a statute limitation, whether the file is open, but don't we have to measure this as of 2011? Yes, Your Honor. Absolutely. But that's just four years. That's only four years. Yes, absolutely. But what you have at that point is the actual factual record in front of you in terms of what the defendant did at the time in 2007, when he had every opportunity and in fact, told the police that he would participate, but then absolutely failed to do so. And so you've got his actual behavior contrasted with the hypothetical of what he might have done in 2011. And I don't think at that point, that's sufficient to establish plausibility, particularly when it's, although the district court ultimately did rely heavily on his lack of cooperation in terms of bringing forward the prosecution. One of the other things that the district court focused on was his conduct initially. And in the district court's opinion, it lays out in pretty specific detail. He was initially approached and interviewed while in the hospital. He did not volunteer the fact that, well, perhaps he did not know the person's full name. He did have information about them. They then learned the identity of that individual and the fact that the defendant likely did know them, came back, confronted him with that. And then he made that admission that, yes, I do know that. The police then came to the conclusion that he had lied to them. When you take all of that into consideration, it's extraordinarily unlikely, in fact, just not plausible that the Phoenix Police Department would grant that certification. But moreover, that factual conclusion by the district court would also underlie USCIS's determination about whether or not to grant a waiver. Because one of the factors, and in fact, the government's position is that one of the most critical factors is the degree of assistance that an individual provides to law enforcement balanced against that individual's criminal history. And that's really where Cisneros Rodriguez and Trinidad Hernandez come into play. Because what it makes clear is that the court absolutely must take into consideration the degree of assistance that an individual provides. Contrary to what appellant's position is, we don't believe those cases are in conflict. What they represent is a spectrum, with Cisneros Rodriguez on one end, holding out that if you go so far as to cooperate, to testify, and to be a critical component in obtaining a conviction, that weighs heavily in your favor. Versus Trinidad Hernandez, which is much more factually similar to this instance, where an individual initially makes a report, but then it's their failure to continue to cooperate that prevents prosecution from going forward. I have a preliminary issue before this argument. I think that the appellant is suggesting that the government waived any challenge to whether Mr. Lopez-Reyes would have received the certificate from the Phoenix Police Department, and that the government did not challenge that or argue that below. Is there a waiver problem here for the government? I don't believe so, Your Honor. The United States affirmatively conceded a number of things at the district court level. For example, we conceded that under the due process analysis, that there was sufficient evidence to shift the burden back to the United States to prove by clear and convincing evidence. We did that explicitly. We did address in the response at the district court level, the fact that the certification had not been actually granted, and that it was now at the time of the district court hearing, 12 years removed, and there was no evidence the defendant had even made an attempt to do so. So we did not explicitly waive anything, and the record before the district court, based off of the submissions by the defendant himself, were what the court relied on in discounting the expert opinions that were offered by the defendant in support of his claim that he would have received that certification. So no, I don't think we have waived that issue. Ms. Khrushchev's brief states that the only information in the record were these affidavits from two attorneys who they offered as experts, and that the government offered an expert who didn't opine on any of the issues, such as whether Mr. Lopez-Reyes would have received a certification. Why did the government not have its expert reach any of those issues? Your Honor, USCIS, by policy, does not allow their employees to conduct basically an analysis and offer, in effect, an advisory opinion as to an individual case. So Ms. Potter was not in a position to do that. The purpose of her affidavit was to outline the steps that would be required if an individual were to submit an application, and to make clear a number of factors, including the fact that it would be USCIS who would ultimately make the evidentiary determination as to the credibility of any documents that were submitted to include a hypothetical certification, and to discuss the public interest standard, and then the heightened extraordinary circumstances standard that's present as a result of the defendant's armed robbery conviction. Are you saying then that the agency would not allow her to opine on what the likelihood would be that he would get a new visa? That's correct. The agency, again, they don't do these sort of advisory opinions. They will analyze a case once it comes in, but the purpose of that submission was not to provide a contrary opinion. It was merely to obtain that visa, given his criminal history and the particular nature of his convictions. But the district court's rejection of those affidavits by the defendant's experts was absolutely valid, considering that they did not, as the district court did, go through the analysis with regard to the underlying facts. And this is really where it comes back to. The district court's recitation of the defendant's level of involvement must be reviewed, as it appears everyone has and the district court laid out in very specific detail why this defendant was a very poor candidate for any form, frankly, of discretionary relief because of his total lack of cooperation, and ultimately the fact that he was the one who hindered prosecution. The court has no further questions. That's all that I have. Thank you, Mr. Farhana. Ms. Khrushchev, I think we took you down to minute 18, but I'll give you another minute because we went into your time, so you'll have two minutes, 18 seconds. Thank you, Your Honor. I first just want to clear up on the law enforcement certification. The fact of the matter is the defendant submitted a declaration from Margarita Silva, who has extensive experience getting U visa certifications from the Phoenix Police Department under these circumstances, and she opined, her expert opinion was, that Mr. Lopez-Reyes had a plausible claim to a U visa certification. And her declaration doesn't make any sense to me. I mean, I appreciate the fact that that's her opinion, but why couldn't the district judge say, look, with a case where nobody is cooperating with follow-up detectives, so no prosecutor is ever going to file charges on this case, the agency is not, the police department is not going to just give him a certification because he asked for one. Why couldn't the district court say, okay, that's your opinion, but I reject it based on the facts of this case? Well, her opinion acknowledged the facts of the case and also acknowledged the facts of how the Phoenix Police Department deals with these certifications and acknowledged the fact that the U visa waiver program is one of the most generous programs that immigration has. But the concern I'm having is your experts seem to imply that all you have to do is walk into the headquarters and say, I want a certification and they're going to give it to you without regard to whether they even have a prosecutable case because nobody's cooperating. That just doesn't make any sense to me. Well, your honor, it's not true. Well, it's not the case that nobody's cooperating. They were my client and other witnesses provided information that identified who this person was. There's a name in the police reports and what Ms. Silva said. At the end of the follow-up detectives reports, he says, I have to pin this case basically as, you know, open in perpetuity until the victims can, will come forward and help us. And there's no evidence that anybody did that. So the case went nowhere. That could not have been my client's fault, your honor. There were, there were two other victims. But I would like to point out that the government did not challenge this aspect of the case until today. They had not raised this issue. Their sole issue in the brief was against the plausibility of the inadmissibility waiver. And I think that the helpfulness issues are, are confused a little bit in the district court. But my reading of the district court's opinion is that they too, or it too, decided the case based on the plausibility of the inadmissibility waiver. And that requires a detailed review of all of the equities, not simply what is contained in this police report, not simply my client's robberies, but all of his characteristics. And the district court reckoned with, with none of those. And that is, I'm sorry? Has he been removed? He has been removed. Yes. He served his time and he has been removed. All right. I think, thank you. We are over time. Unless Judge Tallman or Judge Bybee have any other questions, we will take this case under submission. Thank you. All right. Thank you, counsel.
judges: Tallman, Bybee, Bade